[L. A. No. 3227.   In Bank.—March 31, 1914]

## PACIFIC SASH AND DOOR COMPANY (a Corporation), Respondent, v. W. C. ELDERTON, Appellant.

MECHANIC'S LIEN—NOTICE BY CLAIMANTS TO OWNER TO WITHHOLD PAY-MENT FROM CONTRACTOR—EFFECT OF NOT GIVING.—Prior to the amendments of 1911 to the code sections governing mechanics' liens, persons who claim liens for work done or materials furnished in the construction of a building, but who have not served notice upon the owner to withhold any sums due the contractor, cannot compel the owner to pay them, in addition to the final payment of twenty-five per cent, the amounts of prior payments actually earned by the contractor on or before completion, but advanced by the owner before the date when such payments were due under the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Flint, Gray & Barker, Gray, Barker & Bowen, for Appellant.

G. C. DeGarmo, M. P. Hopkins, Schweitzer & Hutton, H. S. G. McCartney, John F. Poole, and Rollin Kerns, for Respondents.

SLOSS, J.—A number of actions for the foreclosure of mechanics' liens having been consolidated, a judgment of

foreclosure was entered. The defendant Elderton, owner of the land and building involved, appeals from the judgment and from an order denying his motion for a new trial. The contract was made, and the building erected, prior to the amendments of 1911 to the code sections governing mechanics' liens and the questions presented must therefore be decided according to the law in force at the time of the transactions giving rise to this controversy.

Elderton, as owner, made a contract with one Saffell, as contractor, for the construction of a building, which was thereafter duly completed. The contract price was sixteen thousand three hundred dollars payable in installments. Six progress payments of one thousand dollars each were provided for, then a completion payment of $6,225, and finally, a payment of $4,075, or twenty-five per cent of the total contract price, thirty-five days after the building should be completed and accepted. The contract complied in all respects with the code requirements for the making and filing of a valid building contract.

The claims of the various plaintiffs in the consolidated actions aggregated $9,129.30. The defendant Elderton answered, alleging that he had paid the contractor at the times when they were payable, respectively, the first seven installments of the contract price, including the completion payment of $6,225, and that he held the amount of the final payment, $4,075, in his hands, applicable to the payment of liens. In his answer he offered to pay said sum of $4,075 into court for distribution among such persons as might be determined to be entitled thereto. The court found that the owner had paid to the contractor pursuant to the terms of the contract only $10,225 (instead of $12,225, as stated in the answer), and that $6,075 remained unpaid and applicable to the liens of the plaintiffs. It found, further, that it was not true that all payments had been made when due. Judgment was rendered accordingly.

The various plaintiffs filed, within the proper time after the filing of notice of completion, their claims of lien in regular form. It was stipulated that "no notice under section 1184 of the Code of Civil Procedure . . . was ever served on the owner of said premises by any lien claimant requiring said owner to withhold any money from the contractor."

That the various plaintiffs had furnished labor and material to the amounts claimed by them was not, and is not now, in controversy.

It was shown beyond dispute that, at the time of the filing of the various liens, the contractor had been paid by the owner all of the progress payments, including the completion payment of $6,225. All that then remained due, as between the owner and the contractor, was the thirty-five day payment of twenty-five per cent. There was, however, evidence tending to prove that on two or three occasions during the progress of the work, the owner had made to the contractor advances aggregating two thousand dollars, before the amounts so advanced were payable under the contract. Such amounts were then deducted out of the succeeding payments as they became due.

The question of law to be decided is whether lien claimants who have not served notices to withhold may, in case of a valid contract, compel the owner to pay them, in addition to the twenty-five per cent, amounts of prior payments actually earned by the contractor on or before completion, but advanced by the owner before the date when such payments were due under the contract. The question is not a new one in this court. In *Sweeney* v. *Meyer*, 124 Cal. 512, [57 Pac. 479], the court held against the contention made by the appellant here, viz., that, as the only fund available to the lien claimant who has served no notice is the thirty-five day payment of twenty-five per cent, such claimant is not affected by, and cannot take advantage of, the fact that other payments were prematurely made. The provisions of section 1184 that "no payment made prior to the time when the same is due, under the terms and conditions of the contract, shall be valid for the purpose of defeating, diminishing, or discharging any lien in favor of any person except the contractor, but as to such lien such payment shall be deemed as if not made, and shall be applicable to such liens," was quoted, and it was said that this provision "is not made dependent upon the giving or the failure to give notice." *Sweeney* v. *Meyer* was decided in Department Two and a petition for a hearing in Bank was denied, the Chief Justice dissenting. In *Ganahl* v. *Weir*, 130 Cal. 237, [62 Pac. 512] which followed shortly

after, the same conclusion was announced by Department One of this court.

The question was again under consideration in *Valley Lumber Co.* v. *Struck*, 146 Cal. 266, [80 Pac. 405]. In this case the contract provided that a certain sum should be paid when the building was completed and accepted by the architect. The payment was made upon the completion of the building, but two days before the acceptance by the architect. Upon the first submission of the case, which was in Bank, a judgment holding the owner liable to lien claimants for such payment (which was treated as premature) was affirmed ·on the authority of *Sweeney* v. *Meyer*, 124 Cal. 512, [57 Pac. 479].) The opinion, prepared by Mr. Justice Shaw, was concurred in by four members of the court. The Chief Justice dissented, filing an opinion in which he gave his reasons for thinking the decision in *Sweeney* v. *Meyer* erroneous. Mr. Justice Angellotti dissented on another ground, but added the statement that, if the question had been new, he would have agreed with the views of the Chief Justice. A rehearing was granted, and the appeal again came before the court in Bank. On the second submission, the judgment was reversed, a majority of the court taking the position that, as the clause requiring approval by the architect was for the benefit of the owner solely, it might be waived by him, and a payment made in advance of such approval was not to be regarded as premature so far as the plaintiff's rights were concerned. It thus became unnecessary to decide the question of the effect of a premature payment, if one had been made. Mr. Justice Shaw concurred, taking the position that the payment was premature, but that, for the reasons stated in the dissenting opinion of the Chief Justice on the former submission, the rights of the lien claimants were not affected by such payment. In this opinion the Chief Justice concurred, and Mr. Justice Angellotti concurred in a separate opinion in which he, for like reasons, expressed the view that *Sweeney* v. *Meyer* should be overruled.

In view of the judicial history just recited, the question of law here presented cannot be said to be finally settled by our decisions. It is true that the contention of the respondents has been twice upheld in Department. But at a later date, a Bank decision to the same effect was set aside. Upon re-

submission the appeal was disposed of upon other grounds. While the majority of the court expressed no view, one way or the other, on the question which they had before decided, three justices deliberately declared opinions in opposition to the doctrine of *Sweeney* v. *Meyer*. Taking all the cases together the court has not committed itself to any definite course of decision, and we feel that we are not now precluded from considering the question anew on its merits.

We are satisfied, upon re-examination, that the contention of the appellants should be upheld and the case of *Sweeney* v. *Meyer* overruled. The reasons for this conclusion cannot be better stated than in the following quotations from the dissenting opinion of the Chief Justice on the first submission of *Valley Lumber Co.* v. *Struck:*

"By the Mechanics' Lien Law the owner and contractor are authorized to stipulate for the payment of three-fourths of the contract price of a building in installments to become due, at their option, at or before its completion, but no notice of lien can be recorded until after the completion, and consequently no lien can be acquired upon the building *by merely recording notice* for any greater portion of the contract price than the twenty-five per cent which must be made payable not less than thirty-five days after completion, unless the owner and contractor voluntarily agree that a larger proportion may be retained until after the time when the lien notices may be recorded. But the law also provides for personal and actual notice to the owner by a laborer or materialman of his claim at, or at any time after the time it accrues, irrespective of the completion of the building, and this notice operates as a garnishment to intercept the payment of any installment of the contract price not then due by the terms of the contract, compelling the owner to withhold a sufficient sum to answer such claim and costs. Upon due service of such notice, the owner becomes liable to the extent of all money to become due upon the contract, and in the event that a notice of lien is afterward duly recorded by the claimant, his building is subjected to a lien as security for the just amount of the claim, and that notwithstanding he may have made a premature payment upon the contract price before the receipt of notice. But this is as far as the statute goes. It does not make the premature payment of an intermediate install-

ment of the contract price invalid as to all materialmen, laborers, etc., but only when the effect of allowing its validity would be to *defeat, diminish, or discharge a lien,* in favor of persons other than the contractor. So that, if it is an essential condition prerequisite to the creation of a lien upon the building for any portion of a particular installment of the contract price, that written notice of the claim should be served upon the owner before payment is due, and no such notice is served, a premature payment of such installment does not defeat, diminish, or discharge the lien—there is no lien to defeat or impair—and the failure of the security is due, not to the fault of the owner, but to the default of the claimant who has omitted to take the step made essential by the statute for the acquisition of a lien. His lien has not been discharged or defeated or diminished by the premature payment, because it has never come into existence. If a payment is due on the 19th, and a materialman desires, for his better security, to have it withheld by the owner, he must give notice of his claim before the 19th, or the owner may make the payment with perfect assurance that he will not have to pay again on account of the materialman's claim, as the latter well knows. But if he with this knowledge omits to give the notice (the present case), what right then has he to complain that payment was made on the 17th? He is no worse off than he would have been if it had not been made till the 19th. His notice of lien subsequently filed attaches to the last payment due thirty-five days after completion of the building, but according to the intent, no less than the language of the statute, it does not attach to any previous installment not garnished by actual notice before it fell due.

"The decision in *Sweeney* v. *Meyer* resulted, in my opinion, from the assumption that the provisions of the statute as to notice to the owner and invalidity of premature payments are separate and independent. They are, indeed, separate, as every clause of every statute is necessarily separate from other clauses, but that they are independent I cannot admit. They are related parts of one general scheme, designed to be complete and harmonious, operating for the protection of laborers, mechanics and materialmen, without injustice to owners of property. Upon each class a duty is imposed, and the performance of this duty is the condition of enjoying the rights

conferred. To intercept a payment and secure a lien, notice of the claim must be served before the payment is due. To give the amplest opportunity for service of notice, the owner must make no payment until it is due according to the terms of his recorded contract. If he makes a premature payment he does it at the risk of having to pay twice, but he incurs this liability only in case of a timely notice. If no notice is given there is no lien, and to hold the payment valid harms no one.''

We have nothing to add to the foregoing discussion except the observation that the construction here adopted preserves to lien claimants who have not served notices to withhold the entire fund upon which, under the law and the terms of the contract, they were entitled to rely. On the other hand, the rule laid down in *Sweeney* v. *Meyer* imposes upon the owner, for the benefit of the lien claimants, a penalty for an act which has no substantial relation to any right of such claimants. They would not have been entitled to share in any portion of the progress payments if these payments had been made after they fell due. They were, therefore, not injured in any way by a premature payment. ''The law must be construed against the exaction of the penalty if in reason it can be.'' (*West Coast L. Co.* v. *Knapp*, 122 Cal. 81, [54 Pac. 534]; *Hampton* v. *Christenson*, 148 Cal. 729, [84 Pac. 200].)

It follows that the judgment cannot stand. We are asked by appellant to direct the court below to enter a judgment in accordance with the views here expressed. But this cannot be done in the present state of the findings. The trial court has found that only $10,225 has been paid to the contractor and that $6,075 remains unpaid and in the hands of the owner. This finding is based on the erroneous view that the owner is not entitled to credit for the $2,000 prematurely paid. But, since this court has no power on appeal to make findings of fact, a judgment that the lien claimants are entitled to share in a balance of $4,075 only would not be sustained by the findings. The error of law must be corrected by further proceedings, leading to the making in the court below of findings upon which a proper judgment can be entered.

The finding against the truth of the defendant's averment that ''each of the payments provided for . . . was made

. . . at the time when the same was made payable by the terms of said contract'' may, under the legal conclusions hereinabove expressed, be disregarded as immaterial.

There will be no occasion for a new trial of the issues which are not now in controversy.

The order denying a new trial is reversed, and a new trial ordered with respect to the issues raised by defendant Elderton's allegations of the amounts paid by him to the contractor, and the amount of the contract price remaining in his hands. In all other respects said order is affirmed. The judgment is reversed.

Angellotti, J., Lorigan, J., Shaw, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.